UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
KEVIN HARDIMON,

Plaintiff,

-against-

WESTCHESTER COUNTY,
CORRECTIONAL OFFICER WHITE 1329,
AND CORRECTIONAL SERGEANT
HODGE, INDIVIDUALLY AND IN THEIR
OFFICIAL CAPACITIES

Defendants.
--------------------------------------------------------------x

```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____          │
│ DATE FILED: 11-6-13              │
└─────────────────────────────────┘
```

13 Civ. 1249 (PKC) (MHD)

MEMORANDUM
AND ORDER

CASTEL, District Judge:

Plaintiff Kevin Hardimon brings this action against Corrections Officer White and Corrections Sergeant Hodge, individually and in their official capacities, and Westchester County, alleging that while incarcerated, the individual defendants subjected him to cruel and unusual punishment and violated his due process rights, and that Westchester County failed to prevent these violations. Hardimon's claims are asserted under section 1983, 42 U.S.C. § 1983, and he also asserts a state law assault claim against Corrections Officer White. Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. (Dkt. 17.) Hardimon, who is proceeding pro se, has filed no opposition papers and has not communicated with the Court since the filing of the motion over three months ago.[1] For the reasons stated below, the defendants' motion is granted in part and denied in part.

---

[1] On April 4, 2013, plaintiff notified the Court of his change of address. (Dkt. 9.) On April 18, 2013, plaintiff wrote to Magistrate Judge Michael H. Dolinger, seeking discovery from Westchester County Jail. (Dkt. 10.)

BACKGROUND

According to the complaint, upon Hardimon's return from a court appearance on January 17, 2013, Corrections Officer White approached him and directed him to return to cell 10, where he had been housed. (Dkt. 2 at 5.[2]) Corrections Officer White thereafter directed Hardimon into Cell 12. (Id.) Upon direction from an "unknown correctional officer," Corrections Officer White directed Hardimon to "13-Cell 1-East." (Id.) 13-Cell 1-East was unsanitary and unclean. Id. Hardimon attempted to flush the toilet, which then overflowed. (Id.) He requested that Corrections Officer White call a supervisor. (Id.) Corrections Officer White refused to call a supervisor, and instead stated that he would "call an Inmate to come with the snake sorry that's what happens when you hit correctional staff." (Id.) The complaint alleges that Corrections Officer White's statement and Hardimon's placement in 13-Cell 1-East were in retaliation for a prior incident between Hardimon and another corrections officer. (Id. at 5, 7.) Hardimon repeatedly requested that Corrections Officer White call a supervisor. (Id. at 7.) Hardimon then stood next to Corrections Officer White with his arms crossed, again requesting that he call a supervisor. (Id.) In response, Corrections Officer White stated in profane language that he would hurt Hardimon. (Id.) Hardimon repeated his request that Corrections Officer White call a supervisor. (Id.) Corrections Officer White then "without warning smacked plaintiff in his face then followed with two punches to Plaintiff's face then . . . thru plaintiff to the concrete ground then . . . stompped on plaintiff back 2 times [sic]." (Id.) Corrections Officer White dragged Hardimon for approximately 18 feet into "3 Cell" while screaming expletives at him. (Id.) Corrections Officer White allegedly punched Hardimon in the head three additional times, and picked Hardimon up and dropped him to the ground. (Id.) Hardimon was then taken

---

[2] The Complaint is filed in multiple parts. For ease of reference, the Court will refer to the ECF page numbers to identify pages within the complaint.

to solitary confinement by the Emergency Response Team. (Id.) Hardimon alleges that he suffered bruising and severe back pain, sharp neck pain, lumps on his head, knee pain, insomnia, post-traumatic stress disorder, and anxiety. (Dkt. 2-1 at 5.)

According to the complaint, after this incident, Corrections Officer White created a false disciplinary report, which stated that Hardimon had punched Corrections Officer White. (Dkt. 2 at 7.) Hardimon attempted to submit a grievance to Sergeant Hodge on January 22, 2013, the last day he was able to submit a grievance under Westchester County Jail rules. (Id.) Sergeant Hodge refused to accept Hardimon's grievance form, stating that Hardimon could not "grieve disciplinary." (Id.) Hardimon was found guilty at a disciplinary hearing, and sentenced to "45 days 30 solitary confinement 15 KEEPLOCK status." (Id.) Hardimon appealed that decision, and his appeal was denied. (Id.)

## RULE 12(b)(6) STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)). "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "'detailed factual allegations'" are not necessary. Id. (quoting Twombly, 550 U.S. at 555-56).

In considering a Rule 12(b)(6) motion, all non-conclusory factual allegations are accepted as true, see id. at 678-79, and all reasonable inferences are drawn in favor of the plaintiff. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam).

Moreover, plaintiff's pro se pleadings are "'to be liberally construed . . . [and], however

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97,

106 (1976)).

      "[T]he complaint is deemed to include any written instrument attached to it as an

exhibit or any statements or documents incorporated in it by reference." Chambers v. Time

Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am.

Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).  Finally, an unopposed Rule

12(b)(6) motion is still subject to review on its merits. McCall v. Pataki, 232 F.3d 321, 322 (2d

Cir. 2000).

## DISCUSSION

I.   Monell Claim

      Local governing bodies, such as Westchester County, may be sued directly under

section 1983 only where "a violation of rights resulted from the 'government's policy or custom,

whether made by its lawmakers or by those whose edits or acts may fairly be said to represented

official policy.'" Nagle v. Marron, 663 F.3d 100, 116 (2d Cir. 2011) (quoting Monell v. Dep't of

Social Servs., 436 U.S. 658, 694 (1978)).  To demonstrate Monell liability, a plaintiff must show

a violation of constitutional rights and "(1) 'the existence of a municipal policy or custom . . .

that caused his injuries beyond merely employing the misbehaving officer[s]'; and (2) 'a causal

connection—an 'affirmative link'—between the policy and the deprivation of his constitutional

rights.'" Harper v. City of New York, 424 F. App'x 36, 38 (2d Cir. 2011) (summ. order)

(quoting Vippolis v. Vill. Of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985)) (internal quotation

marks omitted).  "A plaintiff may plead a municipal policy or custom by alleging: (1) a formal

policy, promulgated or adopted by the entity; or, (2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights; or (3) the existence of an unlawful practice by subordinate officials that was so permanent or well settled so as to constitute a 'custom or usage,' and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials." Shepherd v. Powers, 11 Civ. 6860 (LTS), 2012 WL 4477241, at *9 (S.D.N.Y. Sept. 27, 2012) (internal quotation marks omitted).

Hardimon alleges that Westchester County failed to properly supervise or discipline its employees and failed to protect him from Officer White.  In an effort to demonstrate a municipal policy or custom which caused his injuries, he annexes to his complaint a December 6, 2012 memorandum from Captain Wendell W. Smiley (Dkt. 2-3 at 3), responding to another inmate's allegations regarding Corrections Officer White.  The response from Captain Smiley to inmate Santiago Gomez indicates that another inmate had previously filed a grievance against Corrections Officer White.  An allegation of a single prior grievance against an officer does not plausibly allege a "widespread" practice that amounts to a municipal policy or custom.

Hardimon also attaches a copy of a November 19, 2009 letter from then-Assistant U.S. Attorney General Thomas E. Perez to Westchester County Executive Andrew J. Spano (hereinafter "Findings Letter"), which reports the results of a joint investigation of the conditions at the Westchester County Jail by the Civil Rights Division of the Justice Department and the United States Attorney's Office pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997.  (Dkt. 2-4 at 3 - Dkt. 2-10.)  The Findings Letter indicates that the Emergency Response Team ("ERT") used excessive force against inmates.  (Dkt. 2-5 at 1-7.)  The ERT is defined in the Findings Letter as "a team of correction officers and supervisors who respond to

incidents such as inmate-on-inmate and inmate-on-staff assaults.  Each ERT comprises several

correctional officers protected in full riot gear and helmets, and falls under the command of the

Emergency Services Unit."  (Dkt. 2-5 at 7 n.6.)  Hardimon does not allege that any members of

an ERT utilized excessive force against him or that Corrections Officer White was serving as an

ERT member at the time of the incident.  Therefore, even when liberally construed, the

complaint does not allege that Westchester County has a policy or custom of individual

corrections officers utilizing excessive force against inmates which was causally connected to

Hardimon's injuries.

Hardimon's conclusory statement that Westchester County "is turning the blind

eye while aware of brutality" (Dkt. 2-1 C) is insufficient to allege a municipal policy or custom

that caused his injuries.  Similarly, his statements that there are "several claims pending against

[Westchester County] for similar behaviors in U.S.D.C. S.D.N.Y." and that "this recently

occur[r]ed to ronald akridge and count less others [sic]" are conclusory and do not plausibly

allege a municipal policy or custom which caused his injuries.  (Dkt. 2-1 C.)  Additionally,

Hardimon has not set forth any allegations that would support a claim of municipal liability for

violation of his due process rights.  Accordingly, the section 1983 claims against Westchester

County are dismissed.

II.     Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought

with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA's exhaustion

requirement "applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). It is non-discretionary and absolute. See Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") The exhaustion must be "[p]roper," meaning that it must "compl[y] with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

In Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004), the Second Circuit set forth a three-part inquiry for the district court to conduct in addressing the affirmative defense of failure to exhaust. Failure to exhaust may be excused or justified when "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." Ruggiero v. Cnty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Hemphill v. New York, 380 F.3d at 686).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). "[A] Rule 12(b)(6) motion is the proper vehicle to assert an exhaustion defense only where the plaintiff's failure to exhaust is apparent from the face of the complaint . . . ." Harris v. Westchester Cnty. Dep't of Corr., 06 Civ. 2011 (RJS), 2008 WL 953616, at *3 (S.D.N.Y. Apr. 3, 2008) (internal quotation marks omitted).

Here, Hardimon admitted in the complaint that he did not file a grievance, but he also alleged that Sergeant Hodge prevented him from filing a grievance by not accepting his grievance while Hardimon was in solitary confinement.  Although Hardimon has not alleged that he exhausted his administrative remedies, the complaint alleges facts which may amount to a justification or excuse for failure to exhaust.  Defendants have not satisfied their burden to demonstrate non-exhaustion, as they have neither provided information regarding their grievance procedures nor demonstrated that there is no excuse or justification for the plaintiff's failure to exhaust administrative procedures.  Defendants offer mere assertions in their memorandum in support of their motion to dismiss that Hardimon failed to exhaust his administrative remedies because he did not file a grievance regarding the alleged excessive force, or a subsequent grievance when Sergeant Hodge allegedly refused to accept his initial grievance.

"Plaintiff is not required to plead exhaustion to survive a motion to dismiss." Harris, 2008 WL 953616, at *4 (citing Jones, 549 U.S. at 216).  "Because the Court cannot undertake the Hemphill inquiry until the factual record is developed, dismissal . . . at this early stage is premature.  The circumstances relative to exhaustion may look quite different on a motion for summary judgment and nothing herein is intended to prejudice defendants' right to seek dismissal after close of discovery."  Brown v. Austin, 05 Civ. 9443 (PKC), 2007 WL 2907313, at *3 (S.D.N.Y. Oct. 3, 2007) (citing Ziemba v. Wezner, 366 F.3d 161, 164 (2d Cir. 2004).

III.   State Law Assault Claim

"[I]n a federal court, state notice-of-claim statutes apply to state-law claims." Hardy v. New York City Health & Hosps., 164 F.3d 789, 793 (2d Cir. 1999).  Hardimon did not file and serve a notice of claim on the defendants within 90 days of the events giving rise to the

claim, as required by New York General Municipal Law §§ 50-e and 50-i.  New York's 90-day

notice-of-claim requirement applies to state tort claims brought as pendent claims in a federal

action.  Fincher v. Cnty. of Westchester, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997).  New York

General Municipal Law § 50-e requires an individual to file a notice of claim before filing an

action for damages against a municipality or its employees and serve that notice of claim on the

municipality or its employees within 90 days of the events giving rise to the claim.  Therefore,

Hardimon's state law assault claim is dismissed.

IV.   Denial of Access to Courts as Result of Refusal to Process Grievance

          Hardimon alleges that he was denied access to the courts by Sergeant Hodge's

failure to accept his grievance.  Prisoners have a right to meaningful access to the courts.  See

Bounds v. Smith, 430 U.S. 817, 828 (1977).   This right is a substantive right derived from the

First and Fourteenth Amendment.  Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).  "[P]rison

officials cannot unreasonably obstruct [this right] and . . . states have affirmative obligations to

assure [that this right is not violated]."  Washington v. James, 782 F.2d 1134, 1138 (2d Cir.

1986).  To satisfy this right, state prisons must provide inmates "a reasonably adequate

opportunity to present claimed violations of fundamental constitutional rights to the courts."

Bounds, 430 U.S. at 825.  "However, inmate grievance programs created by state law are not

required by the Constitution and consequently allegations that prison officials violated those

procedures [do] not give rise to a cognizable § 1983 claim."  Harris, 2008 WL 953616, at *5

(internal quotation marks omitted).  See also Cancel v. Goord, 00 Civ. 2042 (LMM), 2001 WL

303713, at *3 (S.D.N.Y. Mar. 29, 2001).  "Rather, in the event that prison officials ignore a

grievance that raises constitutional claims, the proper avenue to seek relief is the course taken by

plaintiff here: directly petitioning the government for redress of his claims."  Harris, 2008 WL

953616, at *5.  Because Hardimon's allegations regarding Sergeant Hodge's failure to accept his grievance do not support a claim under section 1983, the claim is dismissed.

CONCLUSION

For the reasons stated above, defendants' motion to dismiss (Dkt. 17) is GRANTED as to all claims brought against defendant Westchester County, the state law assault claim against all defendants, and the claim of denial of access to the courts against all defendants and DENIED regarding all other claims.  Defendants' counsel is ordered to mail to the plaintiff copies of all unpublished authorities cited herein.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        November 6, 2013